**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| THE GLAZIER GROUP, INC. and, | § | |
| T-BONE RESTAURANT, L.L.C., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-06-2752 |
| | § | |
| MANDALAY CORP., MANDALAY | § | |
| RESORT GROUP, and MINA GROUP | § | |
| L.L.C., | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

Glazier Group, Inc. and T-Bone Restaurant, L.L.C. (together, "Glazier"), hold a federally registered trademark for the words "STRIP HOUSE" as a name for bars and restaurants. Glazier owns and operates a chain of steak restaurants under the name "STRIP HOUSE" in several cities, including Houston, Texas. Glazier alleges that it is in the process of opening another "STRIP HOUSE" restaurant in a casino and hotel in Las Vegas, Nevada. In this case, Glazier sues the Mandalay Corp. and the Mandalay Resort Group (together, the "Mandalay Defendants") and Mina Group L.L.C. Glazier's suit arises out of the defendants' use of the name "STRIP**STEAK**" for their steak restaurant and bar that opened in the Mandalay Bay Resort & Casino in Las Vegas in October 2006. Glazier contends that the defendants' use of the "STRIP**STEAK**" name for a restaurant on the Las Vegas strip violates the plaintiffs' rights in the "STRIP HOUSE" mark. Glazier asserts federal claims for

trademark infringement, unfair competition, and trademark dilution, and state-law claims for trademark dilution.  (Docket Entry No. 1).  The Mandalay Defendants and Mina have moved to dismiss for lack of personal jurisdiction and improper venue or, alternatively, to transfer this case to the District of Nevada, where both jurisdiction and venue are proper.  (Docket Entry No. 6, 19).  Glazier has filed an objection and response to both defendants' motions, (Docket Entry No. 13, 31, 48).  The Mandalay Defendants and Mina have replied.  (Docket Entry No. 40, 45).

Based on a careful review of the pleadings, the motions, responses, and replies, the record, and the applicable law, this court denies the motions to dismiss and grants the motions to transfer to the District of Nevada, where both personal jurisdiction and venue are secure and where there is a strong nexus to the subject matter of this dispute.  This case is transferred under 28 U.S.C. § 1406.[1]  The reasons for this ruling are explained in detail below.

## I.  The Record Evidence as to Personal Jurisdiction and Venue

Glazier Group, Inc. is a New York corporation with its principal place of business in New York.  T-Bone Restaurant L.L.C. is a New York limited liability company with its principal place of business in New York.  Glazier registered the words "STRIP HOUSE" as federally registered service mark number 2,660,181, for "restaurant and bar" use.  Glazier

---

[1]  The parties have also filed motions relating to the merits.  They are Glazier's motion for a preliminary injunction (Docket Entry No. 4); the defendants' motion in limine to exclude the McCullough consumer confusion surveys (Docket Entry No. 36); Glazier's motion to exclude the supplemental expert report and testimony of Dr. Edward Blair (Docket Entry No. 42); and Glazier's unopposed motion for leave to exceed the page limit for the response to the motion in limine, (Docket Entry No. 49).  Because the case is transferred, the motions that address the merits are not resolved in this memorandum and opinion.

filed for the mark in April 2000 and it was registered in December 2002.  (Docket Entry No. 4, Ex. 1).  Glazier owns and operates STRIP HOUSE steak restaurants in several cities in New York, Texas, New Jersey, and Florida.  Glazier plans to open a STRIP HOUSE restaurant in Nevada in a casino resort on the Las Vegas "strip."  (Docket Entry No. 4 at 3–4).

Mandalay Corp. and Mandalay Resort Group are Nevada corporations with their principal places of business in Nevada.  The Mandalay Resort Group is a holding company that owns Mandalay Corp., which in turn owns and operates the Mandalay Bay Resort & Casino.  (Docket Entry No. 6, Ex. A, Declaration of Bryan A. Wright, Assistant Secretary for the Mandalay Defendants).  The parent company of the Mandalay Resort Group is MGM Mirage.  The Mina Group L.L.C. is a California limited liability company with its principal place of business in California.

In 2006, Mandalay Corp. and Mina entered into an agreement to operate a STRIP**STEAK** restaurant in the Mandalay Bay Resort & Casino on the Las Vegas strip.  (Docket Entry No. 19, Ex. A, Declaration of Michael Mina).   Under that agreement, Mandalay Corp. owns the restaurant's physical property and assets; and Mina manages the restaurant and owns the rights to the "STRIP**STEAK**" trade name and service mark.  (*Id*.).  The "two words are together as one word" in the name and mark, with the word "steak" in bold."  (Docket Entry No. 45, Ex. C, p. 201, Deposition of Scott Voeller, vice-president of marketing for the Mandalay Corp.).  The STRIP**STEAK** restaurant opened in October 2006 in the Mandalay Bay Resort & Casino.  (Docket Entry No. 40, Ex. A, p. 10, Voeller Depo.).

As the Mandalay Defendants point out, the plaintiffs have not distinguished between the contacts of the Mandalay Resort Group and the Mandalay Corp. with Texas or with this district.   The plaintiff has the burden of showing personal jurisdiction over each defendant. *Guidry v. U.S. Tobacco Co., Inc.*, 188 F.3d 619, 625 (5th Cir. 1999).  The contacts that the plaintiffs identify appear to be primarily the contacts of the Mandalay Corp., which owns and operates the Mandalay Bay Resort & Casino, rather than the contacts of the holding company, the Mandalay Resort Group.    The Mandalay Defendants have submitted evidence showing that they are not residents of Texas; they have no registered agent in Texas; they do not maintain an office, mailing address, or telephone number in Texas; they do not have a place of business or employees in Texas; they have not had board meetings in Texas; they do not have bank accounts or own real property in Texas; they have not paid income or property taxes in Texas; and they have  not filed articles of incorporation in Texas.  (Docket Entry No. 6, Ex. A, Declaration of Bryan Wright).

Glazier has submitted evidence of what it describes as the Mandalay Defendants' contacts with Texas, most of which are unrelated to the subject matter of this suit.  Glazier asserts that the Mandalay Defendants' representatives frequently communicate with Texas residents through telephone calls, visits, mail, and emails.  (Docket Entry No. 48, p. 7; Docket Entry No. 16, p. 4).  Glazier has submitted a telephone-call listing that shows numerous calls to Texas residents.  (Docket Entry No. 48 at 7, Ex. 6).  Glazier has also submitted a list of visits that representatives of the Mandalay Defendants made to Texas between September 2001 and September 2006.  (Docket Entry No. 48, Ex. 7).  Seven of

those visits were to Houston.  (*Id*.).  The Mandalay Defendants send email and direct mail communications to customers around the country.  (*Id*., Ex 1, p. 00818).  Glazier asserts that the Mandalay Defendants have sent promotional materials to Texas residents through 350 direct mails and 350 emails in the last three years.  (Docket Entry No. 48 at 7, Ex. 1).

The Mandalay Defendants respond that they do not target Texas in their communications.  The Mandalay Defendants emphasize that the only services and goods they provide are in Las Vegas.  The Mandalay Defendants assert that they do not make unsolicited contacts or send unsolicited emails or letters to customers, including Texas residents. Instead, the Mandalay Defendants assert that they only contact customers with whom they have a prior relationship and send promotions to customers who have asked to be informed of offers.  (Docket Entry No. 40 at 5).

Glazier also asserts that the Mandalay Defendants license viewing rights to individuals and entities in different states, including Texas, to events taking place in the Las Vegas Mandalay Bay resort.  For example, Glazier asserts that the Mandalay Defendants licensed viewing rights to a 1999 boxing match between Oscar De Le Hoya and Felix Trinidad.  (Docket Entry No. 16, p. 4, citing *Ent. by J&J v. Al-Waha Enters*., 219 F. Supp 2d. 769, 771 (S.D. Tex. 2002)).  The Mandalay Defendants respond with evidence that they have not "broadcast or simulcast events in Texas," (Docket Entry No. 40, p. 4, Ex. A, p. 186, (Voeller Depo.)).  The case Glazier cites shows only that the Mandalay Bay Resort & Casino was the location of the boxing match not that the Mandalay Defendants licensed the event to be shown in Texas.

Glazier also submits an unsigned copy of a "2005 Wholesale Contract Agreement" between Mandalay Bay Resort & Casino and American Airlines Vacations. American Airlines is headquartered in Dallas, Texas. (Docket Entry No. 48, p. 7, Ex. 8). Under this agreement, which ended on December 31, 2005, Mandalay Bay Resort & Casino allocated rooms to American Airlines Vacation to use for its vacation-travel customers. (*Id.*). The Mandalay Defendants respond that Mandalay Corp. has wholesale agreements with vacation divisions of airlines, including American Airlines, under which Mandalay Corp. provides a block of rooms at a set price that the carrier can use in their "vacation packages." The Mandalay Corp. has similar wholesale arrangements with vacation travel organizations that use different air carriers. (Docket Entry No. 40, Ex. A, pp. 181-182 (Voeller Depo.)).

Glazier also alleges that the Mandalay Defendants' parent corporation, "MGM Grand Hotel," "regularly avails itself of the Texas courts" to enforce judgments for gambling debts owed by Texas residents. (Docket Entry No. 13, p. 3, Ex. 5). The record shows that the Mandalay Defendants' parent corporation is MGM Mirage, not MGM Grand Hotel, which is an indirect subsidiary of MGM Mirage. (Docket Entry No. 31 at 3); *Nelson v. MGM Grand Hotel, L.L.C.*, 2005 WL 1949536 (S.D. Tex. Aug. 12, 2005).

Glazier also submits information about a website, www.mandalaybay.com, and the extent to which it is interactive. Glazier argues that visitors to the website—including visitors from Texas—can apply for "marker limits," become a "business affiliate," and can make reservations for services and amenities at the Mandalay Bay Resort & Casino in Las Vegas. (Docket Entry No. 13, p. 2 and Exs. 1, 1a, 1b, 1e, 1g). After a marker application

is filled out online, Mandalay sends documents in the mail to be filled out and completed. Counsel for Glazier completed such an online application and received a "confirmation page related to my application stating that the Mandalay Defendants will mail documents to me." (Docket Entry No. 48, Ex. 2, Declaration of Neal Massand, ¶ 6).  Evidence in the record shows that Mandalay extended $19 million in marker credit to customers with Texas addresses in 2004 and $23 million in 2005.  (Docket Entry No. 48, Ex. 1, p. 00817).  The evidence shows that while visitors to www.mandalaybay.com can  fill out a "marker limit application" to seek credit from the casino, they cannot enter into a marker agreement through the website.  Instead, such an agreement can "only be completed by the applicant, in person, in Las Vegas, after identification is verified and signatures are obtained."  (Docket Entry No. 40, Ex. C, Depo. of Rose Frawert, controller of the Mandalay Bay Resort & Casino).

The opportunity to become a "business affiliate" through the Mandalay Bay website is a link to a website of MGM Mirage, which in turn offers an opportunity to apply to become an online marketing affiliate of MGM Mirage, not of the Mandalay Bay Corp. (Docket Entry No. 40, Ex. B, Voeller Declaration).  MGM Mirage is the parent corporation of the Mandalay Defendants.  The record does not contain further evidence as to the relationship among the Mandalay Corp., the Mandalay Group, and MGM Mirage.

Glazier also submitted printouts from the Mandalay Bay Resort & Casino website from October 22, 2006, after this lawsuit was filed, showing the contents of www.mandalaybay.com at that time.  The website describes available jobs at the

STRIP**STEAK** restaurant in Las Vegas and allows visitors to "apply on-line."   (Docket Entry No. 13, Ex. 1f).  The www.mandalaybay.com website includes a description of the STRIP**STEAK** restaurant and its offerings and allows visitors to make reservations at the restaurant.  (Docket Entry No. 13, Ex. 1a).

The Mandalay Defendants do not dispute that they presently include information about the restaurant on the Mandalay Bay Resort & Casino website and allow visitors to make reservations at the restaurant through the website.  The Mandalay Defendants present evidence showing that they did not post information about the STRIP**STEAK** restaurant on the website until after August 25, 2006, the date this lawsuit was filed.  Before then, the website did not advertise STRIP**STEAK** or permit visitors to the website to make a reservation at the restaurant.  (Docket Entry No. 40, Ex. C, Voeller Declaration).  Voeller, vice-president of marketing for the Mandalay Corp., stated in his declaration that "[n]either Mandalay Corp., nor Mandalay Resort Group, has engaged in any advertising for Strip**Steak** off of the Mandalay Bay property, with the exception of listing the restaurant on the Mandalay Bay website.  The Mandalay Defendants have not advertised Strip**Steak** in any off-site of Mandalay Bay print, television, or radio media to date.  The Strip**Steak** listing on the Mandalay Bay website was first posted after August 25, 2006."  (*Id*. at ¶ 4).  Voeller stated that visitors to the Mandalay Bay Resort & Casino website could not make reservations at the STRIP**STEAK** restaurant at the time this lawsuit was filed, although visitors could reserve other services offered at the resort in Las Vegas.  (*Id*. at ¶ 2).

The evidence shows that the Mandalay Defendants provide no services to Texas or other customers outside Las Vegas. (Docket Entry No. 40 at 10, Ex. B, Voeller Declaration). Although Texas customers can communicate with the Mandalay Defendants from Texas to reserve hotel rooms and other hotel services or apply for marker limits, "the transactions are not completed and the services are not provided unless and until the Texas resident visits the Mandalay Bay Resort & Casino in Las Vegas." (*Id.*).

The evidence as to Mina is focused on its website advertising of the STRIP**STEAK** restaurant. Mina, like the Mandalay Defendants, has submitted evidence that it is not a resident of Texas; has no registered agent in Texas; does not maintain an office, mailing address, or telephone number in Texas; does not have employees in Texas; is not licensed to do business in Texas; has no bank accounts or real property in Texas; has not paid income or property taxes in Texas; and has not filed articles of incorporation in Texas. (Docket Entry No. 19, Ex. A, Mina Declaration).

Glazier argues that Mina's website advertises the allegedly infringing mark in Texas through the website, which is accessible in this district. Glazier has submitted an affidavit by a legal assistant, Adam Gallegos, dated December 8, 2006, about the Mina website. (Docket Entry No. 31, Ex. A). Gallegos stated that he visited www.michaelmina.net and saw a link to each of Mina's eight restaurants, including the Mandalay Bay Resort & Casino STRIP**STEAK** restaurant. Gallegos does not state the date he accessed the Mina website. Through the website, "a visitor can access the restaurant reservation system through the Mandalay Bay Resort and Casino"; can link to a "Mailing List" to sign up to receive

information about promotions; can link to "Employment," which describes openings at the different Mina restaurants and provides an email address to obtain employment information or submit a resume; and can follow a link to purchase a cookbook produced by Mina through a national bookseller chain.  (*Id*. at ¶¶ 5–8).  Gallegos did not state that he  made a reservation at STRIP**STEAK** using the website.

Gallegos also stated that on October 31, 2006 and November 21, 2006, he used internet search engines to find an online article online entitled "Michael Mina Raises the Steaks in Las Vegas."  Gallegos  found this article on "websites run by television stations located in and broadcasting into the state of Texas," including KTRE-TV (Lufkin and Nacogdoches, Texas), WFAA-TV (Dallas and Fort Worth, Texas), and KSLA-TV (Shreveport, Louisiana covering the "Ark-La-Tex" region).  (Docket Entry No. 31, Ex. A, ¶ 9).  The record does not show the date this article was published on the media websites.  Glazier asserts that KTRE has "coverage" in this district and that this article was a press release with contact information for an advertising firm and a public relations contact at MGM Mirage, the Mandalay Defendants' parent company.  (Docket Entry No. 31, p. 3).

In his deposition, Michael Mina testified that the Mina Group would approve the writing of any press release but would not distribute press releases or other advertising.  (Docket Entry No. 31, Ex. B, p. 81).  Scott Voeller, vice-president of marketing for the Mandalay Corp., testified in his deposition that Mandalay Corp. produced and sent out the press  release.  (Docket Entry No. 48, Ex. 5, p. 97).

Kristin Kola McLarty, the vice-president of public relations and marketing for Mina, submitted a declaration describing the limited interactive features of the Mina website. McLarty stated that visitors to www.michaelmina.net cannot make reservations at restaurants, including the STRIP**STEAK** restaurant, on that website.  Although the website shows a link to do so, that feature was not enabled.  (Docket Entry No. 45, Ex. A, ¶ 2). Instead, visitors are provided a link to the website of a third party, such as the Mandalay Bay Resort & Casino, where the restaurant is located.  (*Id.*).  As noted, the Mandalay Bay Resort & Casino website did not provide visitors the ability to make an online reservation until after this lawsuit was filed.  Similarly, McLarty testified that although the website shows a link to a cookbook produced by Mina, clicking on that link will route a user to the Barnes and Noble Bookstore website through which the book can be purchased.  (*Id.* at ¶ 3).  Mina's website contains a form that a website visitor can fill out to be added to a mailing list, to be "notified of winemaker's dinner, special seasonal menus, holiday happenings, and other culinary activities at Michael Mina's restaurants."  (*Id.* at ¶ 4).  This form does not generate an automatic response but adds users to an email addressee list.  Mina has sent four emails from that list since March 2005, one of which announced the opening of the STRIP**STEAK** restaurant in October 2006.  (*Id.* at ¶ 5).  The website added the references to STRIP**STEAK** restaurant on October 2, 2006.  (*Id.* at ¶ 6).

Michael Mina also provided a declaration.  (Docket Entry No. 45, Ex. B).  He explained that Mina's website "does not provide an 'interactive' feature for applying for employment with Mina.  The website merely provides an email address where a person may

send his/her resume for consideration.  There is no immediate or automatic response, not any 'interactive', relay, feedback, or chat-type feature."  (*Id*. at ¶ 14).

Glazier contends that this court has general and specific personal jurisdiction over Mina and the Mandalay Defendants.  Glazier also contends that based on the defendants' websites that include and use the allegedly infringing STRIP**STEAK** mark, venue is proper in the Southern District of Texas.  The Mandalay Defendants and Mina dispute that either personal jurisdiction or venue is proper in this forum.

## II.    Personal Jurisdiction

### A.    The Applicable Legal Standards

Fifth Circuit case law provides two approaches for a district court to assert personal jurisdiction over a defendant.  The first applies in diversity cases and bases a finding of jurisdiction on the plaintiff proving that the defendant had minimum contacts with the forum state, so that the  long-arm statute of the forum state confers personal jurisdiction  and the exercise of such jurisdiction by the forum state is consistent with due process under the United States Constitution. *See Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999).  The second  approach applies in federal question cases if the federal statutory grant of jurisdiction is broader than that allowed under the traditional minimum contacts inquiry.  *Submersible Systems v. Perforadora Central*, 249 F.3d 413, 418 (5th Cir. 2001) ("Absent a federal statute that provides for more expansive personal jurisdiction, the personal jurisdiction of a federal district court is coterminous with that of a court of general jurisdiction of the state in which the district court sits.").  Because the Federal Trademark Act does not authorize national

service of process on a nonresident defendant, the issue is personal jurisdiction under the Texas long-arm statute. *See Autoscribe Corp. v. Goldman and Steinberg*, 47 F.3d 1164 (4th Cir. 1995); *Caterpillar, Inc. v. Miskin Scraper Works, Inc*., 256 F. Supp. 2d 849 (C.D. Ill. 2003) (citing FED. R. CIV. P. 4(k)(1)(A)). In Texas, this inquiry will focus on whether the due process requirements of the Fourteenth Amendment are satisfied. *Omni Capital Intern., Inc. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 108 (1987); *Religious Tech. Ctr. v. Liebreich*, 339 F.3d 369, 373 (5th Cir. 2003). If jurisdiction is proper under the long-arm statute, the second step, as in a diversity case, is to determine whether the exercise of personal jurisdiction complies with the due process requirements of fair play and substantial justice. Due process permits the exercise of personal jurisdiction over a nonresident defendant when the defendant has "minimum contacts" with the forum state and the exercise of jurisdiction over the defendant does not offend "traditional notions of fair play and substantial justice." *Latshaw*, 167 F.3d at 211 (quoting *Int'l Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1945)).

A plaintiff bears the burden of demonstrating facts sufficient to support personal jurisdiction over a nonresident defendant. That burden is met by a *prima facie* showing; proof by a preponderance of the evidence is not necessary. *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002); *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000). "The court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Id.* "[O]n a motion to dismiss for lack of jurisdiction, uncontroverted

allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor." *D.J. Invs. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 546 (5th Cir. 1985) (quoted in *Bullion v. Gillespie,* 895 F.2d 213, 217 (5th Cir. 1990)).

The "minimum contacts" aspect of the analysis can be established through "contacts that give rise to 'specific' personal jurisdiction and those that give rise to 'general' personal jurisdiction." *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994).  A court's exercise of specific jurisdiction is appropriate only when the cause of action arises out of or results from the nonresident defendant's contacts with the forum state. *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 270 (5th Cir. 2006); *Gundle Lining Const. Corp. v. Adams County Asphalt, Inc.*, 85 F.3d 201, 205 (5th Cir. 1996) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 446 U.S. 408, 414 n.8 (1984); *Religious Tech. Ctr.*, 339 F.3d at 375).  To determine whether specific jurisdiction exists, a court must "examine the relationship among the defendant, the forum, and the litigation to determine whether maintaining the suit offends traditional notions of fair play and substantial justice." *Gundle Lining Const.,* 85 F.3d at 205; *Helicopteros Nacionales*, 466 U.S. at 414 n.8.  A court may exercise specific jurisdiction when: (1) the nonresident defendant purposely availed itself of the privileges of conducting activities in the forum state; (2) the controversy arises out of or results from the defendant's contacts with the forum state; and (3) the exercise of personal jurisdiction is fair and reasonable. *Seiferth*, 472 F.3d at 270; *Freudensprung v. Offshore Tech. Serv.*, 379 F.3d 327 (5th Cir. 2004) (citations omitted).  "The non-resident's 'purposeful availment' must be such

that the defendant 'should reasonably anticipate being haled into court' in the forum state." *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 419 (5th Cir. 1993) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). Specific jurisdiction requires a sufficient nexus between the nonresident defendant's contacts with the forum and the cause of action. *Rittenhouse v. Mabry*, 832 F.2d 1380, 1390 (5th Cir. 1987). "A plaintiff bringing multiple claims that arise out of different forum contacts of the defendant must establish specific jurisdiction for each claim." *Seiferth*, 472 F.3d at 474.

When the cause of action does not arise from or relate to the foreign defendant's purposeful conduct within the forum state, due process requires that the foreign defendant have engaged in continuous and systematic contacts with the forum state before a court may exercise general personal jurisdiction. *Helicopteros*, 466 U.S. at 414–15; *Freudensprung*, 379 F.3d at 343; *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 374 (5th Cir. 1987). The plaintiff must demonstrate contacts of a more extensive quality and nature between the forum state and the defendant than those needed to support specific jurisdiction. *Dalton v. R & W Marine*, 897 F.2d 1359, 1362 (5th Cir. 1990) (citations omitted). "To exercise general jurisdiction, the court must determine whether 'the contacts are sufficiently systematic and continuous to support a reasonable exercise of jurisdiction.'" *Holt Oil & Gas v. Harvey*, 801 F.2d 773, 777 (5th Cir. 1986) (quoting *Stuart v. Spademan*, 772 F.2d 1185, 1191 (5th Cir. 1985) (citations omitted)); *see also Freudensprung*, 379 F.3d at 343.

"General jurisdiction can be assessed by evaluating contacts of the defendant with the forum over a reasonable number of years, up to the date the suit was filed." *Access Telecom, Inc. v. MCI Telecommunications Corp*., 197 F.3d 694, 717 (5th Cir.1999), *cert. denied*, 531 U.S. 917 (2000); *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 561 (8th Cir. 2003) ("Minimum contacts must exist either at the time the cause of action arose, the time the suit is filed, or within a reasonable period of time immediately prior to the filing of the lawsuit."); *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp*., 84 F.3d 560, 569-70 (2d Cir.) ("In general jurisdiction cases, district courts should examine a defendant's contacts with the forum state over a period that is reasonable under the circumstances up to and including the date suit was filed to assess whether they satisfy the 'continuous and systematic' standard; the determination of what period is reasonable in the context of each case should be left to the court's discretion."), *cert. denied*, 519 U.S. 1007 (1996); *Noonan v. Winston Co.*, 135 F.3d 85, 95 (1st Cir. 1998) ("[T]he time the complaint is filed is the time at which the plaintiff urges the court to assert its authority over the defendant.  It would be conceptually incoherent to permit the court to look to post-complaint contacts in proving that it had authority at a previous time.").

Courts in the Fifth Circuit follow the same approach in specific jurisdiction cases, looking to facts up to the filing of the complaint rather than postcomplaint conduct.  *See Asarco, Inc. v. Glenara, Ltd.*, 912 F.2d 784, 787 at n.1 (5th Cir.1990); *Mgmt. Insights, Inc. v. CIC Enterprises, Inc.*, 194 F. Supp. 2d 520 (N.D. Tex. 2001).  This approach is followed

in other courts as well.  *See, e.g., Farmers Ins. Exchange v. The Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911, 913 (9th Cir. 1990) ("Only contacts occurring prior to the event causing litigation may be considered."); *Cambridge Literary Properties, Ltd. v. W. Goebel Porzellanfabrik G.mb.H. & Co. Kg.*, 295 F.3d 59, 65-66 (1st Cir. 2002)(in copyright infringement case, holding that for purposes of specific jurisdiction, contacts should be judged when the cause of action arose, regardless of a later lessening or withdrawal).  The Fifth Circuit does not follow the approach taken in some cases in the Third Circuit that do not set a temporal limit on the minimum contacts analysis.  *See, e.g., Endless Pools, Inc. v. Wave Tec Pools, Inc*., 362 F. Supp. 2d 578, 583–85 (E.D. Pa. 2005); *see also Beverly Hills Fan Co. v. Royal Sovereign Corp*., 21 F.3d 1558, 1562–634 (Fed. Cir. 1994).

### B.    Analysis

#### 1.    Specific Jurisdiction

Glazier has not made the showing necessary to show specific personal jurisdiction over the Mandalay Defendants and Mina.  To show specific jurisdiction over a defendant in a trademark infringement case, the plaintiff must show that its claim results from injuries relating to the "defendant's activities directed at the forum."  *Gardemal v. Westin Hotel*, 186 F.3d 588, 598 (5th Cir. 1999).  There is very little evidence as to any contacts between the Mandalay Resort Group and Texas.  With respect to the Mandalay Corp. and Mina, the only basis for specific jurisdiction is the website advertising the STRIP**STEAK** restaurant and allowing users to make online reservations at the restaurant.

This circuit has drawn  on the approach of *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.,* 952 F. Supp. 1119 (W.D. Pa. 1997), in determining whether the operation of an website can support the minimum contacts necessary for the exercise of personal jurisdiction. *Mink*, 190 F.3d at 336  *Zippo* sued a "sliding scale" to measure an internet site's connections to a forum state. *Zippo*, 952 F. Supp. at 1124.  A "passive" website, one that merely allows the owner to post information on the internet, is at one end of the scale.  It will not be sufficient to establish personal jurisdiction even if the website is accessible in the forum state.  At the other end are sites whose owners engage in repeated online contacts with forum residents over the internet, and in these cases personal jurisdiction may be proper.  *Id.*  In between are those sites with some interactive elements, through which a site allows for bilateral information exchange with its visitors.  The websites at issue have some interactive elements and require an examination of the extent of the interactivity and nature of the forum contacts.  *Revell v. Lidov,* 317 F.3d 467,  470 (5th Cir. 2002); *Arriaga v. Imperial Palace, Inc*., 252 F. Supp. 2d 380 (S.D. Tex. 2003).

Glazier has provided no information as to the contents of the Mandalay Defendants' or Mina's websites at the time this lawsuit was filed.  The Mandalay Defendants and Mina have shown that in August 2006, the websites did not contain information about the STRIP**STEAK** restaurant.  It was not until October 2006, after the lawsuit was filed, that the websites included information about the restaurant.  Mina has presented evidence that there

is no interactive feature for making reservations on its own website.[2]   The Mandalay

Defendants have presented evidence that its website did not allow users to make reservations

at the restaurant until October 2006, after the complaint was filed.   In the Fifth Circuit,

postcomplaint activities cannot create specific personal jurisdiction that was lacking when

the lawsuit was filed.    *See Asarco*, 912 F.2d at 787,  n.1; *Mgmt. Insights*, 194 F. Supp. 2d

520.

        Even if Mina and the Mandalay Defendants had posted the allegedly infringing mark

on their websites at the time this lawsuit was filed, this would be insufficient to show specific

personal jurisdiction.  In *Quick Techs., Inc. v. Sage Group PLC*, 313 F.3d 338, 345 (5th Cir.

2002), a trademark infringement and unfair competition case, the evidence showed that the

defendant had operated a website with the allegedly infringing mark and used an allegedly

infringing mark in "publications which circulate the United States."   The court found that

"[g]enerally, advertisements are insufficient to establish personal jurisdiction" and refused

to allow specific personal jurisdiction based on the website and print advertising, even

though it used the allegedly infringing mark.   *Id.; see also Mink v. AAAA Development*

---

[2]  The argument that the Mina website provides a link that directs users to another website that allows
the user to make reservations or purchases is not necessary to the conclusion that the website is not a basis
for personal jurisdiction.  *See Arriaga v. Imperial Palace, Inc*., 252 F.Supp.2d  at 387 (the fact that the
defendant uses an "invisible, behind-the-scenes entity" as an agent to provide the link to the webpages where
reservations are confirmed on-line is irrelevant when the "'face' of the web site" is "such that a user would
reasonably believe his is forwarding his reservation and credit card information directly to the" defendant
hotel; the "fact that a third-party handles the basics of information transfer is irrelevant.).

*L.L.C.,* 190 F.3d 333 (5th Cir. 1999) (website and advertisement in national journal insufficient for specific jurisdiction in copyright case).

>2.    *General Jurisdiction*

The basis for subjecting Mina to this court's general personal jurisdiction is its website. Glazier also argues that the Mandalay Defendants' use of the Mandalay Bay Resort & Casino website—along with other contracts—subjects them to general personal jurisdiction. The courts have held that evidence of a website that is accessible nationwide (rather than targeted to the forum state), and that allows a patron to make reservations for or to obtain information about services that are not provided or paid for until the patron travels to a location outside the forum state, does not support general personal jurisdiction in the forum state. *See, e.g.*, *Arriaga v. Imperial Palace, Inc*., 252 F. Supp. 2d at 385-86 (in a Texas suit arising out of a personal injury from a fall in a Las Vegas hotel, the court found that a nationally accessible website that allowed users to make reservations and to obtain information about promotions, a "player's club," employment opportunities, and other services was insufficient for general personal jurisdiction over the hotel in Texas; the court noted that no services were received until the customer arrived in Las Vegas) (citing *Bell v. Imperial Palace Hotel/Casino*, Inc., 200 F. Supp. 2d 1082, 1085 (E.D. Mo. 2001) (an internet website that allowed visitors to the site to make hotel room reservations was not sufficient contact in Missouri to subject the defendant to personal jurisdiction for a tort that occurred in Nevada)); *Snyder v. Dolphin Encounters Ltd.*, 235 F. Supp. 2d 433 (E.D. Pa.

2002)(websites for booking reservations, providing information, and ordering souvenirs, not directed to the forum state, did not establish general personal jurisdiction; a different result would mean that virtually any corporation with a website would be subject to general jurisdiction in every state); *see also McCague v. Trilogy Corp.*, 2007 WL 839921, at *3–*5 (E.D. Pa. Mar. 15, 2007) (Hawaii hotel's website allowing reservations online did not subject it to Pennsylvania jurisdiction); *but see Brown v. Grand Hotel Eden*, 214 F. Supp. 2d 335, 339 (S.D.N.Y. 2002) (finding general jurisdiction over Swiss hotel because a New York agent made the booking and a New York agency's website permitted reservations to be confirmed automatically for the hotel).

The evidence as to the Mandalay Defendants' other contacts with Texas is an insufficient basis for finding general personal jurisdiction. The facts that the Mandalay Defendants advertise nationally, send information about promotions and other offers to those who request it, receive revenue from Texas residents for goods and services that are only provided if and when the residents travel to Nevada, and enter into some contracts with companies that are based in Texas to provide goods and services in Nevada, are insufficient to find the continuous and systematic contacts necessary for the exercise of general personal jurisdiction. National advertising, not targeted to the forum state, has been found insufficient as a basis for general personal jurisdiction. *See Singletary v. B.R.X., Inc.*, 828 F.2d 1135, 1136 (5th Cir. 1987) ("[A]dvertising in national publications is not in itself sufficient to subject a defendant to personal jurisdiction."); *see also Gardemal v. Westin Hotel Co.*, 186

F.3d 588 (5th Cir. 1999) (no general jurisdiction over Mexican hotel which advertised in several magazines and newspapers in Texas and contracted with many Texas businesses); *Salem v. Circus Circus Hotels, Inc*., 1997 WL 102481 (N.D. Tex. 1997) (evidence of the defendants' "multi-media advertising blitzes in the Dallas area to lure Texas consumers to [defendants'] casinos in Las Vegas" was insufficient for general personal jurisdiction); *Nelson v. MGM Grand Hotel, L.L.C.*, 2005 WL 1949536 (S.D. Tex. Aug. 12, 2005) (evidence that MGM Grand Hotel—an indirectly owned subsidiary of MGM Mirage like Mandalay Corp.—had sent representatives to make sales visits to Texas, operated a website that allowed reservations, solicited Texas residents by telephone, and obtained revenue from Texas residents for services and goods provided to those residents in Nevada was insufficient to subject the MGM Grand Hotel to general personal jurisdiction in Texas);

3.    *Summary*

The evidence on personal jurisdiction makes one point very clear. The subject matter of this dispute and the parties' activities at issue are centered in Las Vegas, Nevada, not Texas. Las Vegas is where the defendants have opened a restaurant using an allegedly infringing name and where the plaintiffs intend to open a restaurant with the name of their registered trademark. Although venue—which depends in part on personal jurisdiction—must be decided to transfer under 28 U.S.C. § 1406(a), whether personal jurisdiction exists over either or both defendants need not be resolved to determine whether transfer under 28 U.S.C. § 1404(a) is proper. *See Liaw Su Teng v. Skaarup Shipping Corp.*,

743 F.2d 1140, 1148 (5th Cir. 1984), *overruled on other grounds by In re Air Crash Disaster Near New Orleans*, 821 F.2d 1147 (5th Cir. 1987) ("While ordinarily a court may not take any action against a party over whom it lacks personal jurisdiction, § 1404(a), as interpreted by this circuit, permits the court in which an action is filed to make an initial determination that its forum is not proper even for determining the jurisdictional issue, and it may transfer the case to a proper forum in which all questions, including the threshold one of personal jurisdiction, may be resolved."); *Koehring Company v. Hyde Construction Company*, 324 F.2d 295 (5th Cir. 1963); *Watershed Software Group, L.L.C. v. Camping Cos., Inc*., 2002 WL 31528464, at *1 (E.D. La. Nov. 8, 2002) ("[B]ecause this Court is determining the appropriateness of transfer pursuant to 28 U.S.C. § 1404(a), it is not incumbent upon the Court to address personal jurisdiction."). *See* 14D C. WRIGHT, A. MILLER, & E. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3827 (3d ed. 2007); 1 MOORE'S FEDERAL PRACTICE, § 0.145 [4. -5] at 1610-12.

The venue analysis resolves the forum in which this case should proceed.

## II.    Venue

### A.    The Applicable Legal Standards

Glazier alleges that venue is proper under 28 U.S.C. § 1391(b).[3]   The relevant provisions state:

---

[3] Because the Lanham Act has no special venue provision, the general venue statute applies. *See Woodke v. Dahm*, 70 F.3d 983 (8th Cir. 1995); *Jelec USA, Inc. v. Safety Controls, Inc*., 2006 WL 3358896, at *2 (S.D. Tex. Nov. 17, 2006).

(b) A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

(c) For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. In a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State, and, if there is no such district, the corporation shall be deemed to reside in the district within which it has the most significant contacts.

Once a defendant raises the issue of improper venue, the plaintiff has the burden to prove that venue is proper. *Gullion v. JLG Serviceplus, Inc.*, 2007 WL 294174, at *5 (S.D. Tex. Jan. 29, 2007) (citing *Psarros v. Avior Shipping, Inc.*, 192 F. Supp. 2d 751, 753 (S.D. Tex. 2002); *Laserdynamics Inc. v. Acer Am. Corp.*, 209 F.R.D. 388, 390 (S.D. Tex. 2002)). The plaintiff may meet that burden by presenting facts that, taken as true, establish venue. *See Bigham v. Envirocare of Utah, Inc.*, 123 F. Supp. 2d 1046, 1048 (S.D. Tex. 2000) (citing *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir.1994)). A court should accept uncontroverted allegations in the plaintiff's complaint as true and resolve factual conflicts in the plaintiff's

favor. *Id.; McCaskey v. Cont'l Airlines, Inc.*, 133 F. Supp. 2d 514, 523 (S.D. Tex. 2001). The court is to determine venue based on the facts at the time the complaint was filed. *Hoffman v. Blaski*, 363 U.S. 335, 342-44 (1960); *Harris v. Black Clawson Co.*, 961 F.2d 547, 549-50 (5th Cir. 1992); *Norsworthy v. Mystik Transport, Inc.*, 430 F. Supp. 2d 631, 633–34 (E.D. Tex. 2006); *Nutrition Physiology Corp. v. Enviros Ltd.*, 87 F. Supp. 2d 648, 652 (N.D. Tex. 2000); *Horihan v. Hartford Ins. Co. of the Midwest*, 979 F. Supp. 1073, 1076 (E.D. Tex. 1997).

### B.    Whether Venue is Proper in the Southern District of Texas

Glazier argues that venue is proper in this district because "a substantial part of the events or omissions giving rise to the claim" occurred here.  Glazier bases that argument on the fact that the  Mandalay Defendants and Mina have websites accessible in this district that display the allegedly infringing mark, STRIP**STEAK**.   As discussed above, the record shows that at the time this lawsuit was filed, neither of the websites advertised the STRIP**STEAK** restaurant.  (Docket Entry No. 40, Ex. A; Docket Entry No. 45, Ex. A).

Glazier cites two cases for the proposition that venue is proper in a district in which a website advertising or displaying an allegedly infringed trademark is accessible: *Telephone Audio Products v. Smith*, 1998 WL 159932 (N.D. Tex. Mar. 25, 1998), and *International Truck and Engine Corp. v. Quintana*, 259 F. Supp. 2d 553 (N.D. Tex. 2003).  Both cases are distinguishable from the present suit.  In *Telephone Audio*, the defendants' website not only allegedly displayed trademarked materials, but the defendants also solicited dealers and

distributors in the district, attended a trade show in the district, and sold products with the mark in the district.  The court found that venue was proper because "a substantial part of the events or omissions giving rise to the trademark claim occurs in the district where advertising and sales display the allegedly infringing trademark."  1998 WL 159932 at *4, n.6.  In *International Truck*, the defendants allegedly operated a website with infringing marks, but also attended trade shows in the district and displayed the mark at the trade shows, sent unsolicited promotional materials to a school in the district, sold the product that displayed the mark in the district, and called to solicit customers in the district using the mark.  259 F. Supp. 2d at 557; *see also Domino's Pizza v. Caribbean Rhino, Inc*., 453 F. Supp. 2d (E.D. Mich. 2006) (venue proper where website solicited franchisees and sold infringing products in the district).  In the present case, by contrast, the extent of advertising and other infringing activities in this district is limited.

The courts have held that advertising on a website similar to that present here after the complaint was filed is insufficient to establish venue in a trademark case.  In *Shari's Berries Int'l v. Mansonhing*, 2006 WL 2382263 (E.D. Cal Aug. 17, 2006), a copyright and trademark infringement case, the defendant allegedly  a website that included allegedly copyrighted text, photographs, and layout.  The website contained a toll-free number and an email address for viewers to contact the defendants, but did not allow customers to place orders.  The court found that "[s]uch a passive website does not support finding venue proper" for the trademark claims.  *Id.* at *2.  In *Dakota Beef L.L.C. v. Rigors*, 445 F. Supp. 2d 917 (N.D. Ill

2006), the defendant operated a website advertising products with allegedly infringing marks. *Id.* at 920.  While the website was equipped to take orders, only two orders were received, none were filled, and none were shipped to the district.  *Id.* at 920–21.  The court concluded that the website was "not enough to constitute a 'substantial' part of the infringement alleged" and did not make venue proper in the district.  *Id.* at 291.

Venue is not proper in this district under section 1391(b)(2).  Nor is it proper under 1391(b)(1).  Under section 1391(c), a corporate defendant "shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction."  For the reasons explained in detail, there is an inadequate basis for find that personal jurisdiction is proper over all the defendants in this district.

## C.      Transfer

There are two statutory bases for transferring venue.  Section 1406(a), which applies when venue in the transferor court is improper, gives a court discretion to "transfer such case to any district or division in which it could have been brought . . . if it be in the interest of justice."  28 U.S.C. §1406(a).  Rather than dismissing a case filed in the wrong district, a district court has the discretion under 28 U.S.C. § 1406(a) to transfer the case to a district in which it could have been brought.  *Dubin v. U.S.*, 380 F.2d 813, 816 (5th Cir. 1967); *Burr v. Transohio Savings Bank*, 77 F.3d 477 (5th Cir. 1995). Section 1404(a) applies when venue in the transferor court is proper.  It states, "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or

division where it might have been brought." 28 U.S.C. §1404(a).  The district court has broad

discretion in deciding whether to order a transfer.

 1. *Section 1406(a)*

When venue is improper in the transferor court, that court has the discretion to transfer

rather than dismiss an action under section 1406(a), in the "interest of justice."  *Burr*, 77

F.3d at 477 (citing *Goldlawr*, 369 U.S. at 467); *Bonded Inspections, Inc. v. Northrop

Grumman Corp.*, 1998 WL 185518, at *2 (N.D. Tex. April 10, 1998); *Padel v. Carnival

Corp.*, 1997 WL 732424, at *2 (E.D. La. Nov. 24, 1997).  To transfer a case under section

1406(a), "it is enough simply that the court thinks transfer is in the interest of justice."  14D

C. WRIGHT, A. MILLER, & E. COOPER, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION

§ 3811 (3d ed. 2007).

All the defendants in this case are clearly subject to personal jurisdiction in Nevada.

The case could have been filed in Nevada.  The defendants' allegedly infringing use of the

trademark is advertising a Las Vegas restaurant.  The plaintiffs intend to open a restaurant

in Las Vegas using their trademarked name.  The federal district court in Nevada has

undisputed jurisdiction over the parties and venue is clearly proper.    The personal

jurisdiction and venue objections are mooted by transfer to the District of Nevada.  Such a

transfer serves the convenience of the parties and facilitates resolution on the merits.  *See

Danuloff v. Color Ctr.*, 1993 WL 738578, *6 (E.D. Mich. Nov.22, 1993) ("[T]he interest of

justice is served when a case is transferred from a forum where there is a difficult question of personal jurisdiction to a district in which personal jurisdiction is clearly established.").

### 2. Section 1404(a)

Even if this court did have personal jurisdiction over the defendants and venue was proper in this district, transfer to the District of Nevada would nonetheless be granted under 28 U.S.C. § 1404(a).   Section 1404(a) states that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."   The purpose of this statute is to protect litigants, witnesses, and the public against unnecessary inconvenience and expense, and to avoid wasted time, energy, and money.  *See Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964); *Jackson v. W. Telemarketing Corp. Outbound*, 245 F.3d 518, 522 (5th Cir. 2001). The decision to transfer a pending case is committed to the sound discretion of the district court.  *See Action Indus. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 339 (5th Cir. 2004); *Jarvis Christian Coll. v. Exxon Corp.*, 845 F.2d 523, 528 (5th Cir. 1988).  The party moving for a change of venue bears the burden of demonstrating why the forum should be changed.  *See Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir. 1989); *Toshiba Corp. v. Hynix Semiconductor, Inc.*, No. 04-2391, 2005 WL 2415960, at *2 (N.D. Tex. Sept. 30, 2005).

Whether to transfer a case under section 1404(a) "turns on a number of private and public interest factors, none of which are given dispositive weight."  *In re Volkswagen, AG*, 371 F.3d at 203 (citations omitted).  The concerns include: (1) the availability of compulsory

process for unwilling witnesses and cost of attendance for willing witnesses; (2) the relative ease of access to sources of proof; (3) the plaintiff's choice of forum; (4) the possibility of delay and prejudice if transfer is granted and all other practical problems that make trial of a case easy, expeditious and inexpensive; (5) administrative difficulties; and (6) the familiarity of the forum with the law that will govern the case. *See Toshiba*, 2005 WL 2415960, at * 3; *Lebouef v. Gulf Operators, Inc.*, 20 F. Supp. 2d 1057, 1059 (S.D. Tex. 1998); *Dearing v. Sigma Chem. Co.*, 1 F. Supp. 2d 660, 664 (S.D. Tex. 1998); *Dupre v. Spanier Marine Corp.*, 810 F. Supp. 823, 825 (S.D. Tex. 1993); *Hogan v. Malone Lumber, Inc.*, 800 F. Supp. 1441, 1443 (E.D. Tex. 1992). A court may consider a wide range of circumstances in evaluating the facts involved in each case. *See Hogan*, 800 F. Supp. at 1443; *Frazier v. Commercial Credit Equip. Corp.*, 755 F. Supp. 163, 166 (S.D. Miss. 1991); *Fletcher v. S. Pac. Transp. Co.*, 648 F. Supp. 1400, 1401 (E.D. Tex. 1986) (citations omitted).

The defendants argue that most of the witnesses will be in Nevada and few, if any, will be in Texas; that Nevada has an interest in adjudicating a dispute involving two Nevada restaurants; and that most of the documents and records are in Nevada. (Docket Entry No. 40 at 22–23; Docket Entry No. 19 at 14). Glazier agrees that there are few Texas witnesses. "The majority of [Glazier's] witnesses will reside in New York, and the majority of Defendant's witnesses will reside in San Francisco or Las Vegas." (Docket Entry No. 31 at 15). Glazier argues that the only nonparty witnesses are likely to be experts and that the

convenience of party witnesses is given less weight; that many of its records, and its counsel, are in Texas; and that a transfer will delay this case.  (*Id.*).  The relevant factors are each considered below.

       a.     *The Availability of Compulsory Process for Unwilling Witnesses and Cost of Attendance for Willing Witnesses*

There are few, if any, Texas witnesses. Most are either in New York, San Francisco, or Las Vegas.  Although the nonparty witnesses are experts, whose convenience is entitled to less weight in the analysis, the absence of any Texas witnesses is a factor entitled to weight.   Many of the potential witnesses are residents of Nevada or doing business in Nevada.  The record does not show that any witnesses are located in Texas.  This factor favors transfer.

       b.     *Relative Ease of Access to Sources of Proof*

Although Glazier asserts that some of its documents are in Texas, Glazier has not disputed that many documents subject to discovery are located in Nevada.  In addition, the restaurants using the trademark and allegedly infringing name are in Nevada.  This factor favors transfer.

       c.     *The Plaintiff's Choice of Forum*

Glazier argues that this court should defer to its choice of forum.  (Docket Entry No. 31 at 16).  Under Fifth Circuit precedent, "the plaintiff's choice of forum is clearly a factor to be considered but in and of itself it is neither conclusive nor determinative."  *In re*

*Horseshoe Ent.*, 337 F.3d 429, 434 (5th Cir. 2003).  However, "the weight to be accorded may be diminished when a plaintiff brings suit outside his home forum." *Kettler v. Presstek, Inc.*, 2003 WL 21788870, at *2 (N.D. Tex. July 31, 2003) (citing *Alexander & Alexander, Inc. v. Donald F. Muldoon & Co.*, 685 F. Supp. 346, 349 (S.D.N.Y.1988)).  "[T]he plaintiff's choice of forum has reduced significance where most of the operative facts occurred outside the district." *Minka Lighting, Inc. v. Trans Globe Imps., Inc*., 2003 WL 21251684, at *1 (N.D. Tex. May 23, 2003) (citing *Lindloff v. Schenectady Int'l*, 950 F. Supp. 183, 185 (E.D. Tex.1996); *Robertson v. Kiamichi R.R. Co.*, 42 F. Supp. 2d 651, 656 (E.D. Tex.1999)); *see also Travelers Indem. Co. of America v. National Union Fire Ins. Co.*, 2002 WL 1575409 (N.D. Tex. 2002) (giving less weight to plaintiff's forum choice because "none of the operative facts occurred within this district and neither of the [plaintiff] entities is a citizen of this state."); *Ruth v. KLI, Inc.*, 143 F. Supp. 2d 696, 698 (E.D. Tex. 2001) ("[C]ourts have held that a plaintiff's choice is afforded less deference when the plaintiff does not reside in the chosen forum and when none of the operative facts have occurred in the chosen forum.").

Glazier has a restaurant in Texas—as well as in other states—but is not a Texas citizen.  The restaurants at issue in the case are in Nevada.  The operative facts are in Nevada.  This factor does not weigh against transfer.

### d.      The Possibility of Delay and Prejudice

Glazier argues that this case will be delayed by transfer.  (Docket Entry No. 31 at 16).  The record shows that this court entered a scheduling order after a hearing on October 23,

2006.  (Docket Entry No. 11).  On December 19, 2006, this court held a hearing about discovery on personal jurisdiction and venue.  (Docket Entry No. 35).  This court has not yet held a hearing or made a ruling on the merits of this case.  The fact that discovery has already taken will lessen  delay when the case is transferred.  The record does not show that transfer will cause any further delay.  This factor does not weigh against transfer.

>           e.           *Administrative Difficulties*

There is no basis to conclude that the District of Nevada is facing administrative difficulties that will further delay this case.  This factor does not weigh against transfer.

>           f.           *Familiarity of the Forum with the Law That Will Govern the*
>                        *Case*

Federal law applies to this case.  Glazier has alleged some state-law causes of action. Following transfer under section 1404(a) transfer, the transferee court applies the substantive law of the transferor court.  *Ferens v. John Deere Co.*, 494 U.S. 516, 523-525 (1990). Following a transfer under section 1406(a), the transferee court applies its own state law rather than the state law of the transferor district court. *Jackson v. West Telemarketing Corp. Outbound*, 245 F.3d 518 (5th Cir. 2001); *see also Spherion Corp. v. Cincinnati Financial Corp.*, 183 F. Supp.2d 1052, 1057 (N.D. Ill. 2002).  There is no basis to conclude that the Nevada court will be unable to apply the applicable state law.  This factor does not weigh against transfer.

Even if venue was proper in this district, transfer would nonetheless be proper under 28 U.S.C. § 1404(a).  The analysis bolsters the conclusion that a transfer under section 1406 is in the interest of justice.

**IV.    Conclusion**

This court finds that venue is improper in this district and transfers this case to the District of Nevada under 28 U.S.C. § 1406(a).  The Mandalay Defendants' and Mina's motions to dismiss for lack of personal jurisdiction and to transfer under 28 U.S.C. § 1404(a) are moot.  (Docket Entry Nos. 6, 19).  Mina's motion to stay discovery pending the outcome of the pending motion is moot.  (Docket Entry No. 19).

A transfer order will be separately entered.

SIGNED on July 11, 2007, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge